IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEANMARIE W.,[1]

                      Plaintiff,          Civ. No. 6:18-cv-01109-MC

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

                      Defendant.

**OPINION AND ORDER**

_____

**MCSHANE, Judge:**

Plaintiff Jeanmarie W. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is affirmed.

Born in July 1977, Plaintiff was 36 years old on her alleged onset date of January 30, 2014.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

Tr. 301, 306.[2] She completed one year of college as well as a medical assisting course for the state of California, and a real estate course. Tr. 306. Plaintiff has past work experience as a bank teller, cashier, business operations specialist, correctional officer, and realtor. Tr. 307. She alleged disability due to Dercum's disease, chronic migraines, fibromyalgia, degenerative disc disease of the lumbar spine, osteoarthritis, myalgia and myositis, depressive disorder, ankle pain, and chronic pain. Tr. 305.

Plaintiff filed her applications for SSI and DIB on April 9, 2014. Tr. 54, 277-89. Both claims were denied initially and upon reconsideration. Tr. 183-87. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and appeared for a hearing on April 10, 2017. Tr. 77-106. In a written decision dated June 8, 2017 the ALJ denied Plaintiff's applications. Tr. 54-70. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 3-8. Plaintiff now seeks judicial review.

## **STANDARD OF REVIEW**

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 12, provided by the Commissioner.

**DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof fall to the claimant at steps one through four, and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must show that the claimant can make an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

The ALJ performed the sequential evaluation. At step one, the ALJ found that Plaintiff had not performed substantial gainful activity since January 30, 2014, her alleged onset date. Tr. 56. At step two, the ALJ found Plaintiff had the following severe impairments: bilateral ankle osteoarthritis, multilevel cervical degenerative disc disease, mild lumbar degenerative disc disease, fibromyalgia, obesity, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. Tr. 57. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listings. Tr. 27; 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 59.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed for light work with these limitations:

> [Plaintiff] is able to perform pushing, pulling, lifting and/or carrying of twenty pounds occasionally and ten pounds or less frequently. She is able to sit for six hours in an eight-hour workday with normal breaks. She is able to stand and/or walk for up to six hours each total in an eight-hour workday with normal breaks. She is able to perform occasional

reaching overhead bilaterally. She is able to climb ramps and stairs occasionally, but she should avoid climb[ing] ladders, ropes, or scaffolds. She is able to perform work limited to occasional stooping, kneeling, crouching, and crawling. She is able to perform work limited to simple, routine tasks and making simple work-related decisions. She is able to perform work limited to no more than occasional exposure to working in the vicinity of supervisors, co-workers, and the public. She is able to perform work limited to simple, work-related decisions. The claimant's time off can be accommodated by normal breaks.

Tr. 62.

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. Tr. 68. At step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy such that Plaintiff could sustain substantial gainful employment despite her impairments. Tr. 69. Specifically, the ALJ found Plaintiff could perform the representative occupations of small products assembler, laboratory sample carrier, and garment folder. *Id.* As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 70.

Plaintiff contends the ALJ erred by: (I) improperly evaluating the medical evidence; (II) failing to provide clear and convincing reasons to reject her subjective symptom testimony; (III) failing to find her migraines and Dercum's disease to be severe at step two; and (IV) erroneously concluding at step five that she could perform substantial gainful activity in the national economy.

**I.      Medical Evidence**

Plaintiff first argues that the ALJ erroneously rejected the opinion of her treating rheumatologist James Rosenbaum, M.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a

treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

**1. Examining psychologist Claudia Lake, Psy.D.**

Examining psychologist Claudia Lake, Psy.D. performed a 55-minute evaluation of Plaintiff on May 8, 2015. Tr. 598. She found that Plaintiff had difficulty performing simple, routine, detailed, or complex tasks. Tr. 66, 601-02. On May 31, 2015, she diagnosed major depressive disorder of moderate severity, generalized anxiety disorder and posttraumatic stress disorder. Tr. 601-02. Dr. Lake opined Plaintiff would have difficulty in several areas including performing work activities, maintaining regular attendance in the workplace, and completing a normal workday/workweek. Tr. 602.

The ALJ accounted for some of Dr. Lake's limitations in Plaintiff's mental RFC. Tr. 62. The ALJ however discounted Dr. Lake's opinion that Plaintiff had difficulty maintaining regular

workplace attendance, focusing, attending to daily activities, completing a normal workday or workweek without interruption from a psychological condition, and dealing with usual workplace stress. Tr. 67. Instead, the ALJ gave some weight to the opinions of consultative physicians Bill Hennings, Ph.D., and Arthur Lewy, Ph.D., who each opined that Plaintiff's limitations would not prevent her from completing a normal workday or workweek. Tr. 113-38, 141-80. The ALJ was therefore required to provide specific, legitimate reasons to reject the discounted portion of Dr. Lake's opinion. *Ghanim*, 763 F.3d at 1161.

In support of his findings, the ALJ first noted that Dr. Lake's opinion was based in part on Plaintiff's subjective statements, some of which were self-contradictory. Tr. 67. For example, while Plaintiff told Dr. Lake that she no longer did any arts and crafts and that her elderly mother performed "90 percent" of the cooking for their household, Plaintiff testified that she was active in creating artwork for sale online and cared for her mother because she suffered from hoarding disorder and dementia. Tr. 67, 96-97, 737, 775, 779. Plaintiff also testified that she often prepared over half of the nightly meals for her family. Tr. 61-62, 342. Based on these findings, it was reasonable for the ALJ to give less weight to Dr. Lake's opinion to the extent it relied on Plaintiff's subjective statements. *Garrison*, 759 F.3d at 1012.

The ALJ also noted that Dr. Lake's opinion conflicted with Plaintiff's reports of daily activities. Tr. 67. An ALJ may give less weight to a physician's opinion that is inconsistent with a claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ discussed the longitudinal record and concluded Dr. Lake's mental RFC was inconsistent with Plaintiff's ability to home-school and supervise her child and create a web-based support group for other sufferers of Dercum's disease. Tr. 67. It was reasonable for the ALJ to find that a claimant with the limitations assessed by Dr. Lake could not perform these mentally and physically

demanding activities. The ALJ's evaluation of Dr. Lake's opinion was supported by substantial evidence. *Rollins*, 261 F.3d at 856.

### 2. Treating physician Frances Shireman, M.D., and treating nurse John Warner, N.P.

The ALJ also gave little weight to the opinions of treating physician Frances Shireman, M.D., and treating nurse John Warner, N.P. Tr. 67. Dr. Shireman and Mr. Warner opined that Plaintiff could not work due to dysthymia and PTSD. Tr. 67, 705. Mr. Warner also stated he did not believe Plaintiff "is able to maintain employment." *Id.*

Because Dr. Shireman and Mr. Warner's opinion was also contradicted by the opinions of Drs. Lewy and Hennings, the AJL was required to provide specific, legitimate reasons for rejecting it. *Ghanim*, 763 F.3d at 1161. The ALJ may reject a medical opinion when it is inconsistent with other evidence in the record. *Morgan v. Comm'r*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, the ALJ found Dr. Shireman and Mr. Warner's opinion that Plaintiff was completely disabled to be inconsistent with the longitudinal record of Plaintiff's activities, discussed above. Tr. 67. It was reasonable for the ALJ to infer from Plaintiff's demanding activities such as caring for her mother and daughter conflicted with the medical opinion that she was completely incapacitated by dysthymia and PTSD. The ALJ therefore provided one specific, legitimate reason for rejecting Dr. Shireman's and Mr. Warner's opinion.[3]

The ALJ also noted inconsistencies within Mr. Warner's treatment notes. Tr. 67. For example, while Mr. Warner opined in 2016 that Plaintiff was disabled due to mental impairments, he noted in December of the same year that Plaintiff was doing well and appeared "to be quite happy," was "getting along relatively well with others," and was "generally cooperative and

---

[3] The ALJ also noted that Dr. Shireman treated Plaintiff for physical, not mental, health issues and that Dr. Shireman submitted an incomplete assessment of Plaintiff's RFC. See Tr. 697.

pleasant." Tr. 67, 737-38. This apparent inconsistency bolsters the ALJ's findings. In sum, the ALJ justified his evaluation of the medical record with legally sufficient reasons supported by substantial evidence in the record.

## II. Subjective Symptom Testimony

Plaintiff next argues that the ALJ failed to provide clear and convincing reasons for discounting her subjective symptom testimony. An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ, however, is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). In assessing credibility, the ALJ "may consider a range of factors." *Ghanim*, 763 F.3d at 1163. These factors include "ordinary techniques of credibility evaluation," a plaintiff's daily activities, objective medical evidence, treatment history, and inconsistencies in testimony. *Id*. An ALJ may also consider the effectiveness of a course of treatment and any failure to seek further treatment. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Molina*, 674 F.3d at 1113.

In her application to the Agency, Plaintiff stated "I have not been at a point where I could even look for a job because I could not keep it if I got it. I'm in pain constantly due to the Durcum's, migraines and fibromyalgia and degenerative disc disease." Tr. 305-06. She testified that she could not look for work after she quit her last job because she moved here to live with her mother. Plaintiff alleged she cannot work due to emotional instability, and that she cannot sit in a chair leaning back or stay in one position without experiencing discomfort. Tr. 63. She stated that she must lie down about 75 percent of a typical day. *Id.*

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. Tr. 56-68. First, he found that Plaintiff's daily activities contradicted her subjective symptom testimony. The ALJ may reject a claimant's testimony that is inconsistent with their daily activities. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009). Here, while Plaintiff testified that her symptoms prevented her from working or providing any care or services for her mother, Plaintiff reported to Dr. Shireman that she could care for her elderly mother. Tr. 64, 87, 775. The ALJ also noted that while Plaintiff reported to Dr. Lake that her mother prepared almost all of the family meals, Plaintiff also told the Agency that she prepared half to a majority of her family meals. Tr. 61-62, 64, 342, 599. Plaintiff was also able to create artwork that she sold online and care for her preteen daughter. Tr. 65-66, 96-97, 617-18, 784. The ALJ also noted that despite her testimony that she must lie down about 75 percent of each day, Plaintiff could care for her animals, spend all day at the laundromat, run a webpage, and do "a lot" of crafting. Tr. 759, 778-79, 797. On this record, it was reasonable for the ALJ to resolve the inconsistencies in the record by rejecting Plaintiff's claims as to the nature and severity of her symptoms and limitations. The ALJ provided a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony. *Bray*, 554 F.3d at 1227.

## III. Step Two Findings

Plaintiff next argues that the ALJ should have found her migraines and Dercum's disease to be severe at step two.[4] The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20

---

[4] Plaintiff also contends that the ALJ failed to address her history of asthma and reactive airway disease at step two but offers no legal argument or evidence to suggest this was error.

C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citation omitted). The ALJ is required to consider the combined effect of all the claimant's impairments on her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Thus, if the ALJ determines that a claimant has a severe impairment at step two, the sequential analysis proceeds and the ALJ must continue to consider all of the claimant's limitations, severe or not. SSR 96-8p, 1996 WL 374184 (July 2, 1996). If an ALJ fails to identify a severe impairment at step two, but considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

The ALJ resolved step two in Plaintiff's favor, finding that she had the severe impairments of bilateral ankle osteoarthritis, multilevel cervical degenerative disc disease, generalized anxiety disorder, and posttraumatic stress disorder. Tr. 57. The ALJ also assessed Plaintiff's Dercum's disease and migraines at step two and found that they did not cause more than minimal limitation on Plaintiff's ability to perform basic work activity. Tr. 58-59. The court has carefully reviewed the record and finds that the ALJ's interpretation of the medical record was rational. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"). The ALJ noted that Plaintiff's migraines were controlled with medications, did not persist for twelve consecutive months, and did not have more than minimal limitations on Plaintiff's physical or mental ability to perform basic work activities. Similarly, Plaintiff's providers recommended she

treat her Dercum's disease conservatively with diet, massage, compression garments, and herbal supplements. The ALJ reasonably concluded that Plaintiff's migraines and Dercum's disease were non-severe. Tr. 58. *Tommasetti*, 533 F.3d at 1039.

In her brief, Plaintiff points out that she had multiple lipomas (likely caused by Dercum's) removed. Tr. 407, *see also* 710-11 (treatment note documenting multiple pea-size fatty tumors on Plaintiff's scalp). Plaintiff also notes that Jonathan Purcell, M.D., advised her to see a pain management clinic as part of her treatment plan for Dercum's. Tr. 588. She also cites treatment notes documenting complaints about masses on her shoulder and other symptoms associated with Dercum's, including pain from lipomas in her foot. Tr. 554, 560. As for migraines, Plaintiff reported headaches to Dr. Purcell and Dr. Shireman, and Jeffrey Nelson, M.D., noted that her headaches did not respond to Imitrex. While Plaintiff reasonably summarizes this portion of the medical record, she fails to identify specific functional limitations caused by these conditions that the ALJ failed to incorporate into the RFC, which is required to show harmful error at step two. *Lewis*, 498 F.3d at 911.

## IV. Step Five Findings

Plaintiff argues the Commissioner failed to meet his burden at step five to establish that she retains the ability to perform substantial gainful activity in the national economy. At step five, the burden shifts to the Commissioner to demonstrate that although the claimant is unable to perform past relevant work, the claimant is still able to perform work that exists in the national economy. *Bowen*, 482 U.S. at 140–42; *Tackett*, 180 F.3d at 1098. Here, there was no harmful error in the ALJ's step two findings or in his evaluation of the medical evidence and Plaintiff's testimony. The ALJ's conclusions at step five were therefore supported by substantial evidence and are affirmed.

## **CONCLUSION**

For the reasons stated above, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 27th day of August, 2019.

                                       s/Michael J. McShane
                                          Michael McShane
                                 United States District Judge